Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL DELIFUS,<br><br>  Plaintiff,<br><br>v.<br><br>RA PHARMACEUTICALS, INC., EDWARD MATHERS, ROBERT HEFT, TIMOTHY PEARSON, RAJEEV SHAH, AOIFE M. BRENNAN, BO CUMBO, and DOUGLAS TRECO,<br><br>  Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Daniel Delifus ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.  This is an action against Ra Pharmaceuticals, Inc. ("Ra Pharmaceuticals" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Ra Pharmaceuticals and UCB S.A. ("UCB") and Franq Merger Sub, Inc. ("Merger Sub"), an indirect wholly-owned subsidiary of UCB.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Ra Pharmaceutical's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview"), is headquartered in New York, N.Y.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Ra Pharmaceuticals common stock.

7. Defendant Ra Pharmaceuticals is a clinical-stage biopharmaceutical company that develops therapeutics for the treatment of diseases caused by excessive or uncontrolled activation of the complement system. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Market under the ticker symbol, "RARX."

8. Defendant Edward Mathers ("Mathers") is Chairman of the Board of the Company.

9. Defendant Robert Heft ("Heft") is a director of the Company.

10. Defendant Timothy Pearson ("Pearson") is a director of the Company.

11. Defendant Rajeev Shah ("Shah") is a director of the Company.

12. Defendant Aoife M. Brennan ("Brennan") is a director of the Company.

13. Defendant Bo Cumbo ("Cumbo") is a director of the Company.

14. Defendant Douglas Treco ("Treco") is Chief Executive Officer and a director of the Company.

15. Defendants Mathers, Heft, Pearson, Shah, Brennan, Cumbo, and Treco are collectively referred to herein as the "Individual Defendants."

16. Defendants Ra Pharmaceuticals and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On October 10, 2019, Ra Pharmaceuticals and UCB issued a press release announcing that they had entered into a merger agreement whereby UCB would acquire Ra Pharmaceuticals for $48.00 per share in cash. The press release states, in pertinent part:

## UCB Agrees to Acquire Ra Pharmaceuticals: Joining Forces to Improve Treatment Options for People Living With Myasthenia Gravis and Other Rare Diseases

- Will enhance UCB's leadership potential in myasthenia gravis by adding zilucoplan, a peptide inhibitor of complement component 5 (C5) currently in phase 3, to the UCB pipeline alongside to UCB's rozanolixizumab, an FcRn targeting antibody also in phase 3

- Will enrich UCB's pipeline; zilucoplan is a novel, potentially best-in-class investigational molecule also being evaluated in other complement-mediated diseases including amyotrophic lateral sclerosis (ALS) and immune-mediated necrotizing myopathy (IMNM). UCB will develop and, if approved, launch zilucoplan worldwide, accelerating and diversifying company growth

- Will accelerate UCB's long-term innovation capabilities through the addition of Ra Pharmaceuticals ExtremeDiversity™ technology platform
- Plan to maintain productive and innovative Ra Pharma unit in Cambridge, MA, to complement UCB's research hubs

- The acquisition will enable accelerated top and bottom line growth from 2024 onwards

- Total transaction value of approximately US$ 2.1 billion / €2.0 billion (net of Ra Pharma cash) based on US$ 48 in cash per Ra Pharmaceuticals share (approximately US$ 2.5bn / €2.2bn)

- This acquisition will not impact UCB's 2019 financial guidance. It would be dilutive to UCB's mid-term earnings level and hence move the mid-term target of UCB reaching a rEBITDA ratio (to revenue) of 31% to 2022 from 2021 as previously guided

NEWS PROVIDED BY
**UCB**
Oct 10, 2019, 07:00 ET

BRUSSELS and CAMBRIDGE, Massachusetts, Oct. 10, 2019 /PRNewswire/ --

**Regulated Information – Inside Information** –

UCB and Ra Pharmaceuticals Inc. (NASDAQ: RARX, Ra Pharma) announced today their entry into a merger agreement pursuant for which UCB will acquire Ra Pharma. Under the terms of the agreement, Ra Pharma shareholders will receive US$ 48 in cash for each Ra Pharma share at closing. The Boards of Directors of both companies have unanimously approved the transaction, which remains subject

to approval by Ra Pharma shareholders and to obtaining antitrust clearance and other customary closing conditions.

Ra Pharma is a clinical-stage biopharmaceutical company leveraging a proprietary peptide chemistry platform to develop novel therapeutics for the treatment of serious diseases caused by excessive or uncontrolled activation of the complement system, a critical component of the innate immune system. The company was founded in 2008 and is headquartered in Cambridge, MA, U.S. The company's ExtremeDiversity™ platform enables the production of synthetic macrocyclic peptides combining the diversity and specificity of antibodies with the pharmacological properties of small molecules.

Ra Pharma's phase 3 product candidate, *zilucoplan*, is a once-daily self-administered, subcutaneous peptide inhibitor of C5. In December 2018, Ra Pharma announced positive top-line results from a phase 2 trial of *zilucoplan* in patients with generalized myasthenia gravis (gMG), achieving clinically meaningful and statistically significant reductions in both primary and key secondary endpoints. *Zilucoplan* is currently being tested in phase 3 for the treatment of gMG with top-line results expected in early 2021. Further indications that are potentially addressable by *zilucoplan* include immune-mediated necrotizing myopathy (IMNM), amyotrophic lateral sclerosis (ALS) and other tissue-based complement-mediated disorders with high unmet medical need. Ra Pharma is also developing an extended release formulation of *zilucoplan*, as well as a potential first-in-class oral small molecule C5 inhibitor.

\*   \*   \*

**Transaction Terms, Approvals and Timing to Close**

Upon closing, Ra Pharma shareholders will receive US$48.00 in cash for each Ra Pharma share (approximately US$2.5bn/€2.2bn), which represents a transaction value of approximately US$ 2.1 billion / €2.0 billion, net of Ra Pharma cash. The cash consideration represents an approximately 93% premium to Ra Pharma shareholders based on the 30-day volume weighted average closing stock price of Ra Pharma prior to signing. The transaction has been unanimously approved by the Boards of Directors of both, UCB and Ra Pharma and remains subject to approval by Ra Pharma shareholders, obtaining anti-trust clearance and other customary closing conditions. UCB and Ra Pharma expect to complete the transaction by the end of Q1 2020.

**Funding**

The acquisition of Ra Pharma will be financed by a combination of existing cash resources and new bank term loans, arranged and underwritten by BNP Paribas Fortis and Bank of America Merrill Lynch. Pro-forma for this acquisition, UCB's new net debt / rEBITDA ratio would be in the range between 1.5 and 2.0 times with

rapid de-leveraging expected allowing UCB to maintain significant balance sheet flexibility.

*   *   *

**Advisors**

Bank of America Merrill Lynch and Lazard are acting as financial advisors to UCB in relation to the transaction. Covington & Burling LLP is acting as legal advisor to UCB on this transaction.

Centerview Partners is acting as exclusive financial advisor to Ra Pharma on this transaction. Latham & Watkins LLP is acting as legal advisor to Ra Pharma on this transaction.

18. On November 15, 2019, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Securities Exchange Act of 1934 in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

19. The Proxy Statement, which recommends that Ra Pharmaceuticals shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Ra Pharmaceuticals' financial projections; and (ii) the financial analyses performed by Centerview in connection with its fairness opinion.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board and Reasons for the Merger; (ii) Ra Pharma Management Projections; and (iii) Opinion of Centerview Partners LLC.

21. The shareholder vote on the Proposed Transaction is currently set for December 17, 2019. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Ra Pharmaceuticals shareholders will be forced to make a voting decision on the Proposed

Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Ra Pharmaceuticals' Financial Projections

22. The Proxy Statement omits material information concerning Ra Pharmaceuticals' financial projections.

23. The Proxy Statement provides that "Ra Pharma management prepared certain unaudited prospective financial information for Ra Pharma for the calendar years ending 2020 through 2036 (the "*Ra Pharma Management Projections*")."

24. The Proxy Statement further provides that the "Ra Pharma Management Projections were prepared on a standalone basis without giving effect to the Merger and were made available to the Board in its review and evaluation of the Merger and to Centerview[.]"

25. The Proxy Statement provides the following concerning the Ra Pharma Management Projections:

> The Ra Pharma Management Projections were created by Ra Pharma management based on their assumptions about Ra Pharma's business, including with respect to zilucoplan and Ra Pharma's platform, and programs for an extended release (which is referred to as "*XR*") zilucoplan formulation and oral complement component C5 inhibition (both currently in preclinical development) and for royalties and milestones expected from Ra Pharma's collaboration with Merck & Co., Inc. (d.b.a. Merck Sharp & Dohme Corp. outside the United States and Canada) on the development and commercialization of a macrocyclic peptide candidate for the treatment of an undisclosed cardiovascular indication (commenced Phase 1 activities), and risk-adjusted these projections with respect to these product candidates. ***The Ra Pharma Management Projections were based on certain internal assumptions about the probability of success through approval, epidemiology, pricing, sales ramp, market growth, market share, competition, timing for clinical trial completion, commercial launch and patent expiry, as well as estimated tax assets and rates, changes in net working capital, capital expenditures, depreciation and amortization***.
>
> (Emphasis added).

26. The Proxy Statement, however, fails to disclose the impact that the risk adjustments had on the "Ra Pharma Management Projections" and further fails to quantify the assumptions underlying the projections, including "the probability of success through approval, epidemiology, pricing, sales ramp, market growth, market share, competition, timing for clinical trial completion, commercial launch and patent expiry, as well as estimated tax assets and rates, changes in net working capital, capital expenditures, depreciation and amortization."

27. The Proxy Statement further fails to disclose the unadjusted projections (without adjusting for risk and assumptions) so shareholders can properly assess and determine the financial impact the Company's risk-adjustments had on the projections.

28. The disclosure of this information is material because it would provide Ra Pharmaceuticals shareholders with a basis to project the future financial performance of the company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Ra Pharmaceuticals shareholders.

**2. Material Omissions Concerning Centerview's Financial Analyses**

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

31. The Proxy Statement fails to disclose the following concerning Centerview's

"*Selected Public Company Analysis*": (1) the individual inputs and assumptions underlying the selection of the reference range of 2023 EV/REV Multiples of 3.0x to 7.0x; and (2) Ra Pharmaceuticals' estimated net cash as of December 31, 2019.

32. The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Precedent Transaction Analysis*": (1) the individual inputs and assumptions underlying the selection of the reference range of Transaction Values of $1.000 billion to $1.750 billion; (2) Ra Pharmaceuticals estimated net cash as of December 31, 2019; and (3) the premiums paid in each transaction observed by Centerview.

33. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (2) the implied terminal value of Ra Pharmaceutical; (3) the basis for Centerview's assumption that Ra Pharmaceutical's "after-tax unlevered free cash flows would decline in perpetuity after December 31, 2036 at a rate of free cash flow decline of 80% year-over-year"; (4) the tax savings from usage of federal net operating losses and future losses; (5) the estimated costs associated with an assumed $500 million capital raise in 2021; (6) Ra Pharmaceutical's estimated net cash balance as of December 31, 2019; and (7) the number of fully-diluted shares of Ra Pharmaceutical common stock outstanding as of October 8, 2019.

34. With respect to Centerview's analysis of Wall Street analysts' stock price targets for Ra Pharmaceutical, the Proxy Statement fails to disclose the following: (1) the individual price targets for Ra Pharmaceutical observed by Centerview in its analysis; and (2) the sources of those price targets.

35. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Ra

Pharmaceuticals shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Ra Pharmaceuticals shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

36.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

38.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

39.     The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 2, 2019

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*